IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Thomas N., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50201 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Thomas N., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [24], [27]. For the reasons set forth below, Plaintiff's motion for summary judgment [24] is denied and the Commissioner's motion for summary judgment [27], is granted. The final decision of the Commissioner denying benefits is affirmed.

## BACKGROUND

A. Procedural History

On August 1, 2017, Thomas N. ("Plaintiff") protectively filed for disability and disability insurance benefits and supplemental security income. R. 15. These applications alleged a disability beginning on April 15, 2014. *Id.* The Social Security Administration ("Commissioner") denied his applications on December 8, 2017, and upon reconsideration on February 6, 2018. *Id.* Plaintiff filed a written request for a hearing on March 17, 2018. *Id.* On December 10, 2018, a hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Thomas N. appeared and testified. Plaintiff was represented by counsel. *Id.* Also, vocational expert Brian L. Harmon appeared and testified. *Id.* At the hearing, Plaintiff amended his alleged onset date to June 2, 2017 – the day after a prior ALJ issued Plaintiff an unfavorable ruling. Following the December 10, 2018, hearing, the ALJ ordered consultive examinations. *Id.*

On April 18, 2019, the ALJ issued his written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 15-33. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [7]. Now before the Court are Plaintiff's motion for summary judgment [24] and the

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

1

Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [27].

B.  The ALJ's Decision

In his ruling, the ALJ evaluated the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date of June 2, 2017. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: history of cerebrovascular accident; history of systemic lupus erythematosus; history of peripheral vascular disorder; chronic kidney disease with history of left nephrectomy; antiphospholipid antibody syndrome; obesity; mild cognitive disorder; and depression. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 83. *Id*.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: he could stand and/or walk only 4 hours in an 8-hour workday; he could only occasionally operate foot controls on the right and frequently operate foot controls on the left; he could frequently handle and finger bilaterally and only occasionally reach overhead bilaterally; he could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, stoop, knee, crouch, and crawl; and he could have no exposure to unprotected heights, moving mechanical parts, or extreme cold. R. 19-20. Additionally, due to moderate limitations in concentration, persistence, or pace, Plaintiff was further limited to understanding, remembering, and carrying out simple, routine tasks. R. 20. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including inspector, sorter, mail clerk, and cashier. R. 32. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 2, 2017, through the date of decision, April 18, 2019. *Id*.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

In his motion, Plaintiff argues that the ALJ improperly "played doctor" by rejecting multiple medical opinions to determine that Plaintiff can do light work, and in evaluating Plaintiff's credibility. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

As background, Plaintiff previously filed for disability and disability insurance benefits on August 11, 2014, alleging disability beginning on April 15, 2014. On June 1, 2017, ALJ Cynthia Bretthauer found that Plaintiff had the residual functional capacity to perform light work and, therefore, found Plaintiff had not been under a disability from April 15, 2014 through June 1, 2017. R. 154-68. Plaintiff now argues the ALJ here adopted a similar conclusion (finding Plaintiff able to perform light work), without taking into consideration Plaintiff's worsening condition since the prior hearing. Specifically, Plaintiff argues he suffered from another stroke in November of 2017 and was diagnosed with encephalomalacia. At the December 10, 2018, hearing, the ALJ, after receiving all of the testimony, ordered additional consultative examinations of Plaintiff, due in part to the previous examinations being a year old. R. 75. Plaintiff argues the ALJ's RFC was inconsistent with the consultative examiners' findings.

First, Plaintiff argues that consultative medical examiner Dr. Roopa Karri's opinion, which was consistent with the opinion of Plaintiff's rheumatologist, Dr. David Dansdill, was improperly ignored by the ALJ in his findings. Plaintiff takes the position that the ALJ cannot discount an uncontradicted medical opinion. Plaintiff further argues that consultative psychological examiner Dr. David NieKamp's opinion was consistent with Plaintiff's abilities regarding his activities of daily living as well as Plaintiff's subjective statements. Plaintiff argues the ALJ improperly substituted his judgment for that of Dr. NieKamp.

The ALJ acknowledged Dr. Karri's consultative examination and its findings. R. 27. As part of the consult, Dr. Karri noted that Plaintiff reported he was experiencing 30 percent kidney function, eye problems caused by the medication Plaquenil, low back pain, problems with his hands, and reporting using a cane. *Id*. A sensory exam showed decreased findings to pinprick on the right side of his body. Dr. Karri also noted Plaintiff had a slow gait, could not tandem, heel, or toe walk, nor squat. Dr. Karri noted spine tenderness, but straight leg raise testing was negative and range of motion was normal in all joints except shoulders and spine. *Id*. Plaintiff had mild manipulative difficulties on the right with 4/5 grip strength and mild to some moderate difficulty

3

on the left with 3/5 grip strength. Dr. Karri's mental status examination was unremarkable. *Id*. A medical source statement was also completed by Dr. Karri which indicated secondary to low back pain, history of systemic lupus erythematosus and strokes. *Id*. Dr. Karri found Plaintiff could lift and/or carry up to 10 pounds, stand and/or walk up to just one hour total each day, and sit just 4 hours total in an 8-hour workday, which would preclude full-time work. *Id*. Plaintiff was found to be able to walk only 20 feet without a cane. *Id*. Dr. Karri further opined that Plaintiff can never push and/or pull, precluded all postural activities, unprotected heights, and moving mechanical parts. Additionally, Dr. Karri stated that Plaintiff cannot shop, walk a block at a reasonable pace on rough or uneven surfaces, nor climb a few steps at a reasonable pace with the use of a single hand rail. *Id*.

In analyzing Dr. Karri's opinion, the ALJ stated he was not persuaded by Dr. Karri's opinions, finding the limitations in the opinions extreme – considering that they were based on a one-time examination with a limited review of Plaintiff's treatment records. *Id*. The ALJ also noted, in response to Dr. Karri's findings: on two occasions, nephrology records described Plaintiff's kidney function in the 40+ precent range (not 30 as Plaintiff reported); Plaintiff failed to follow through with required eye examinations, explaining why he was no longer on Plaquenil (a medication which, according to treatment records, helped with his systemic lupus erythematosus-type symptoms); Plaintiff failed to keep up to date with back imaging (despite complains of back pain); Plaintiff admitted to continuing smoking and reported drinking two 2-liter bottles of Mountain Dew a day; and Plaintiff remained obese. *Id*.

The ALJ found that the longitudinal treatment records "fail to describe any significant objective exam findings that would support Dr. Karri's opinions/limitations, nor are the opinions/limitations supported by the claimant's subjective complaints to treatment providers over the course of the longitudinal record." *Id*. Specifically, the ALJ noted that Plaintiff was able to care for his toddler grandson, which included driving to pick him up and drop him off at school, was able to help his aunt around the house, and he remained active in his church. R. 27-28. The ALJ was also persuaded by the treatment records that consistently describe a level of noncompliance from Plaintiff, especially Plaquenil, which helped control Plaintiff's symptoms. R. 28. Yet, the ALJ went on to note that even without compliance with the medication, "physical exams consistently failed to show any objective findings that would support the claimant's complaints." *Id*.

Additionally, Plaintiff argues Dr. Karri's opinions were consistent with the opinions of Plaintiff's treating rheumatologist, Dr. Dansdill and, therefore, it was improper for the ALJ to disregard Dr. Karri's opinions. On October 22, 2018, Dr. Dansdill signed a treatment note which included an opinion that is part of Plaintiff's records. In that opinion, Dr. Dansdill stated that Plaintiff tires easily, has experienced global mental decline (often seen in Lupus patients), has had multiple strokes and TIAs, and is "not capable of gainful employment." R. 1684. The note also stated that Plaintiff decided to stop taking Plaquenil due to fear of adverse side effects on his kidneys. Dr. Dansdill noted that the potential for eye side effects outweighed any side effect of Plaquenil on the kidneys. The note also said that Plaintiff had concerns over whether insurance would cover the eye exams needed to go back on the Plaquenil. Finally, the notes stated that Plaintiff is overweight. *Id*.

4

The ALJ found Dr. Dansdill's opinion unpersuasive. He found the opinion conclusory and without sufficient explanation. The ALJ noted that Plaintiff's rheumatology treatment records did not show examination findings that would support Dr. Dansdill's opinion that Plaintiff could not work. R. 26. Earlier in his decision, the ALJ presented some discussion of relevant medical evidence – both before and after Plaintiff's alleged onset date of June 2, 2017. R.21-26. As part of that discussion, the ALJ summarized Dr. Dansdill's most recent treatment record of Plaintiff – prior to his October 2018 opinion. R. 21. That record, dated November 17, 2016, indicated that Plaintiff reported "hurting a bit more" since his May 2016 visit, but that his Lupus was "about the same." R.21/631. Plaintiff's general and musculoskeletal examinations at that visit were unremarkable. R. 22/631-32. Plaintiff reported to Dr. Dansdill at that time that his pain improved with use of Tylenol and was aggravated by "over doing it." *Id*. The treatment notes also stated Plaintiff was "doing fine with no flares in years." Additionally, Dr. Dansdill advised Plaintiff that he would have to stop taking the Plaquenil if he refused to get a yearly eye exam. R. 22/632. The ALJ further reviewed Plaintiff's follow-up visits to the rheumatology clinic. In November of 2017, Plaintiff was seen by Nurse Practitioner, Susan Kutz. At that appointment, Plaintiff complained of allover joint pain; however, he also reported that he had not taken the Plaquenil in six months. Additionally, despite his indications of pain, Plaintiff's physical examination at that time was wholly unremarkable. R. 24/1545-47. The ALJ also noted that Plaintiff saw Nurse Kutz again in January of 2018. The ALJ included in his findings that, at that time, Plaintiff again complained of constant joint pain, but still was not taking the Plaquenil, as prescribed. At that visit, Plaintiff was again instructed to comply with yearly eye exams. His physical examination was again mostly unremarkable. Here the ALJ notes: "So again, treatment records consistently show little in the way of supportive objective findings as to the claimant's allegations, but they also demonstrate issues with compliance." R. 25/1666-68. The ALJ considered Plaintiff's rheumatology records as a whole in assessing Dr. Dansdill's opinion.

The ALJ relied instead on the opinions of the state agency medical consultants. R. 28. These consultants reviewed the medical record and determined that Plaintiff retained the RFC to work at a full range of the light exertion level. *Id*. The consultants noted that Plaintiff reported consistent pain and "residual sensory impairment" R. 28/91,108, 128, 146. They also acknowledged that Plaintiff consistently complained of pain stemming from prior strokes. R. 28. However, the consultants' review of the medical records showed pain as less significant and noted that Plaintiff's pain and other deficits (secondary to systemic lupus erythematosus) failed to support an inability to perform all work activity. *Id*. The ALJ also pointed out that Plaintiff's abilities were further supported by his continued activities of daily living, including watching his grandson, driving, and participating in church activities. *Id*. Despite the state agency medical consultants' findings and determinations, the ALJ found a sufficient basis to include greater restrictions in the RFC, including limiting standing/walking to 4 hours, handling and fingering restrictions, and postural and environmental limitations. *Id*.

As part of Plaintiff's legal argument that the ALJ "played doctor" by rejecting the medical opinions of Dr. Karri and Dr. Dansdill (and relying, instead, on the opinions of the state agency medical consultants), Plaintiff takes the position that the ALJ cannot discount an uncontradicted medical opinion. Plaintiff cites solely to *Herron v. Shalala*, 19 F.3d 329 (7th Cir. 1994), to support this position. In *Herron*, the Seventh Circuit found that "the ALJ failed to provide any explanation for the rejection of Herron's subjective complaints of pain in his hands and fingers." *Id*. at 333-34.

5

The *Herron* court further cited to *Look v. Heckler*, 775 F.2d 192, 195 (7th Cir. 1985), for the proposition that "the ALJ must offer some minimal level of articulation of his assessment of the evidence when the claimant provides considerable evidence to counter the agency's position." *Id*. The *Look* court held: "The ALJ in this case completely failed to explain his reasons for rejecting the uncontradicted evidence that Look suffered from severe and possibly disabling headache pain." *Id*. *See also Elizabeth G. v. Kijakazi*, No. 20 C 1799, 2022 WL 326966, at *5, n. 4 (N.D. Ill. Feb. 3, 2022) ("the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits"). Here, the ALJ has more than adequately explained why he discounted Dr. Karri's opinion, even as it was consistent with that of Dr. Dansdill. Moreover, Dr. Karri's opinions were contradicted by the state agency consultants – as relied on by the ALJ. Importantly, and as noted above, the ALJ detailed Dr. Karri's consultative examination and medical source statement, including Plaintiff's reports of his condition and impressions upon examination. The ALJ's opinion further included Dr. Karri's opinions as contained in the medical source statement. The Court agrees with the Commissioner that "[t]he ALJ reasonably concluded that Dr. Karri's opinions were unsupported and inconsistent with both her own examination results and myriad other treatment records, and, as a result, her opinions were unpersuasive." [27], p. 12. Additionally, "[i]f the findings of the ALJ are supported by substantial evidence, they are conclusive, and we will not substitute our judgment for that of the ALJ." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Plaintiff also argues that the ALJ "impermissibly ignored a line of evidence" by failing to take into consideration Dr. Dansdill's findings. Plaintiff again cites to *Herron* (for the same proposition as above) and also cites to *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001), for the proposition that "an ALJ may not ignore an entire line of evidence that is contrary to [his] findings." *Id*. Plaintiff argues that the ALJ discounted Dr. Dansdill's opinion merely because it was conclusory. However, the ALJ explained that Dr. Dansdill's opinion was not supported by Plaintiff's rheumatology treatment records in that Plaintiff's examination findings did not show that Plaintiff was incapable of performing work. Plaintiff further argues that the ALJ failed to take into account that Dr. Dansdill considered Plaintiff's subjective complaints of pain, including the fact that he tired easily and experienced global mental decline, in drawing his opinion. In support of this argument, Plaintiff cites to *Scivally v. Sullivan*, 966 F.2d 1070 (7th Cir. 1992), which notes that "[a] claimant's subjective complaints of pain[,] if supported by medical signs and findings[,]" must be considered. *Id*. at 1077. Nevertheless, *Scivally* goes on to state that "'[a] claimant's statement of symptoms is not sufficient to establish the existence of an impairment; some objective evidence should be present.'" *Id*., quoting *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir. 1989). As noted above, the ALJ's opinion is replete with reference to Plaintiff's longitudinal medical record contradicting Plaintiff's subjective complaints. The Court disagrees with Plaintiff that the ALJ's opinion regarding Dr. Dansdill's findings to be "without explanation." On the contrary, the Court finds that the ALJ more than met his obligations. *See Hightshoe v. Kijakazi*, No. 22-2359, 2023 WL 3531473, at *3 (7th Cir. May 18, 2023) ("We will uphold an ALJ's credibility determination regarding the claimant's subjective symptoms unless that determination is patently wrong.") (quoting *Wilder v. Kijakazi*, 22 F.4th 664, 653 (7th Cir. 2022)). *See also Arnette R. v. Kijakazi*, 22 C 4225, 2023 WL 3043199, at * 3 (N.D. Ill., April 21, 2023) ("'If a[n]…opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.'" (quoting *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985)).

Finally, Plaintiff argues that the ALJ substituted his judgment (or "played doctor") for that of Dr. David NieKamp, PsyD, the post-hearing psychologist. With Dr. NieKamp, Plaintiff underwent an intellectual assessment and a psychological consultative examination. Dr. NieKamp also completed a medical source statement. The ALJ's decision sets forth Dr. NieKamp findings, including: Plaintiff displayed poor hygiene but was pleasant; Plaintiff reported an ability to perform activities of daily living, but receives assistance from his ex-wife with cleaning, cooking, and finances; Plaintiff has word-finding difficulties and processed information slowly; Plaintiff's "profile" indicated he struggles with global cognition and has difficulty problem solving; and Plaintiff reported to Dr. NieKamp an unstable mood with anxiety and depression, and poor memory. Additionally, Dr. NieKamp stated that Plaintiff displayed intact orientation, no abnormality of gait, intact memory, appropriate thought process, and overall, Plaintiff's cognitive functions were within expected limits. However, in his medical source statement, Dr. NieKamp opined that Plaintiff had "marked limitations" in his ability to understand, remember, and carry out simple instructions, and "moderate limitations" in his ability to interact with others and respond to changes in a work setting. R. 28-29.

The ALJ was not fully persuaded by Dr. NieKamp's opinions, finding the "marked limitations" not supported by the mental status examination findings, and the "moderate limitations" not supported by the treatment records. For example, the ALJ noted that no treatment provider found that Plaintiff would require assistance with complex tasks such as cooking and cleaning, but instead, the treatment providers found that Plaintiff cared for his young grandson, drove, and was active in his church. Also, in his medical source statement, Dr. NieKamp stated that Plaintiff's depression levels would inhibit his ability to interact with others; however, Plaintiff's treatment records emphasized a "waxing and waning" of depression symptoms that were addressed with medication adjustments. R. 30. Instead, the ALJ found more persuasive the State agency psychological consultant assessments, noting their findings were based on a review of the full available record and an understanding of agency rules and regulations. *Id*. The ALJ also found these assessments "internally consistent and well supported by a reasonable explanation of the medical evidence." *Id*. The Court finds that the ALJ thoroughly reviewed Dr. NieKamp's assessments and opinions and reasonably concluded that they were not persuasive. Substantial evidence supported the ALJ's findings, and the record here does not compel a contrary result. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [24] is denied and the Commissioner's motion for summary judgment [27], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 05/23/2023            ENTER:

_Margaret J. Schneider_
United States Magistrate Judge